PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DOMINGO RAMOS TELLADO, Defendant and Appellant.

No. 6053. Argued April 22, 1936.—Decided May 29, 1936.

*Amador Ramírez Silva* for appellant. *R. A. Gómez* and *Luis Janer,* *Prsecuting Attorneys,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The prosecuting attorney for the district of Mayagüez

filed an information on September 1, 1935, against Domingo Ramos Tellado for violation of Section 4 of Act No. 63 of April 28, 1931 (Session Laws, p. 414), which reads as follows:

"The aforesaid defendant Domingo Ramos Tellado, on or about the 16th day of August, 1935, in Mayagüez, P. R., which forms part of the judicial district of the same name, unlawfully, wilfully, and with malice aforethought, manufactured, stored and had for sale, a certain food, to-wit, table vinegar, for the purpose of human consumption, the same being then and there adulterated with water and containing less than four grams of acid for every hundred grams of vinegar."

On the 7th of October following, the information was read, and the defendant pleaded not guilty. The trial was held on the 28th of the same month. At the conclusion of the evidence for the People, the defendant moved that he be discharged. The court overruled his motion, and, after hearing the evidence for the defendant, entered judgment adjudging him guilty of the offense with which he was charged. On November 1 following, the court sentenced defendant to pay a $25 fine, and in lieu thereof, one day in jail for each dollar unpaid.

The defendant, feeling aggrieved, appealed to this Court. He assigned three errors, which in his opinion were committed by the trial court, to-wit: in taking judicial notice of Section 10 of Regulation number 2 of the Board of Health, approved on April 28, 1931; in admitting the testimony of the expert chemist Gadea to prove the result of the expert chemical analysis of the vinegar, and in weighing the evidence.

■ In arguing the first assignment appellant maintains that, upon being informed by the information that he was charged only with a violation of Section 4 of Act No. 63 of 1931, he did not attend the trial prepared to defend himself against a charge of having violated Regulation number 2 of the Board of Health, of April 28, 1931, and that he cannot be convicted thereunder.

As a matter of fact, the appellant was charged, as we know, with the offense above set forth, to-wit; a violation of Section 4 of Act No. 63 of 1931, adopted for the purpose of prohibiting "the sale, storage or transportation of adulterated, misbranded, poisonous, or deleterious foods and drugs or medicines, and for other purposes," which makes any person who shall manufacture, sell, or offer or have for sale, or who shall transport or store any article of food which is adulterated, guilty of a misdemeanor. This is sufficient to inform the defendant that the court not only could but would be obliged to turn to the Regulations of the Board of Health as the best source of determining whether the table vinegar in question was or was not adulterated, particularly since Section 5 of the statute itself directs the Commissioner of Health to make adequate regulations for carrying out the provisions of the act, and to fix among other things the standards for foods, and in view of the further fact that the courts are required by a previous statute on the subject, Act No. 81 of 1912—which to that extent remains in force—to take judicial notice of the Regulations of the Board of Health.

Upon this point see the decisions of this Court in the cases of *People* v. *Massari,* 32 P.R.R. 17 and *People* v. *Rivera,* 31 P.R.R. 612.

█ In arguing his second assignment of error appellant says:

"When the prosecuting attorney offered the testimony of the chemist Carlos R. Gadea, defendant objected to his testimony upon the result of the analysis of the vinegar, since the bottles were taken voluntarily by the defendant to be examined with respect to their labelling (Record, p. 5). We believe that the Board of Health had no right to examine the contents of the bottles, since to determine whether an article of food is or is not adulterated, the officer of the Board ought to take samples, stating at the time what he is taking them for, thus giving opportunity to the person from whom such samples are taken to examine or cause to be examined for himself the sample in his possession by competent experts, and to be prepared

in the subsequent trial to offer the testimony of his own expert against that of the expert of the Board of Health.''

When the expert was called to the witness stand, the record shows that the food and drug inspector of the district of Mayagüez, Pelayo de Luca, had already testified as follows: ''On the 16th of August, 1935, the defendant came to my office with three bottles of vinegar to find out whether I would be willing to send such samples to the Insular Chemical Laboratory to determine whether they were labelled in accordance with. . .  I took them, sealed and labelled them and delivered a sample to the defendant and sent the others to the laboratory.''

In order to find out whether the bottles were correctly labelled, the chemist in the laboratory had to analyze their contents.  And how can the defendant complain that he was defenseless when he himself offered the three bottles which were sealed and labelled, one of which was returned to him, so that he could cause an examination to be made by his own expert once criminal charges had been filed against him?

█ In the third and last error assigned, it is contended that the evidence adduced by the People was insufficient to sustain a judgment of conviction against the defendant.

The first witness to testify was de Lucca, who further testified that the defendant was a merchant, and that he had a vinegar factory and was licensed to sell that article.

The chemist from the Insular Chemical Laboratory, Carlos R. Gadea, was next called.  The essence of his testimony was to the effect that he received the samples in question, analyzed them and found that the vinegar had 3.29 per cent of acid; that vinegar is defined as the product of special natural fermentation, of apples, of cider, of wine, of pineapple . . .;  that acetic acid vinegar is not vinegar, it is a substitute; that natural vinegar after fermentation contains 4 per cent or more, and may be reduced to 4 per cent, and that if it is under 4 it is considered to have been adulterated.

The prosecuting attorney offered in evidence Regulations No. 2, approved on April 28, 1931; the defendant objected on the ground that only a copy was offered, and the court held that since it was within its judicial knowledge it was sufficient.

So far as material, Section 10 of those Regulations provides:

"Section 10.—*Addition of water*.—Whenever a natural vinegar made from cider, wine or the juice of other fruits had been diluted with water, the label must clearly state such fact, for example, 'diluted up to . . . per cent of acid'; *Provided, however,* that such dilution shall never exceed a minimum of 4 per cent of acid . . . ."

Substantially this was the evidence offered by the People. It shows that the defendant, a manufacturer and vendor of vinegar, took three bottles of his product to the Inspector of the Board of Health to be informed as to whether they were properly labelled. From an examination of one of them it appeared that it had been adulterated. That the defendant manufactured the vinegar appears to be clear. It is logical that he made it and that he had it for sale. There appears to have been a clear violation of the statute. What gives us pause is the action of the defendant with respect to the Inspector of the Board of Health, which tends rather to indicate a prospective course of action as to the disposition of the product, rather than a present determination. Nevertheless, the doubt must be resolved against the defendant when consideration is given to the insistence with which he maintains that his consultation with the inspector was solely as to the form of the label, and that the product itself ought not to have been examined. Since the produce manufactured, bottled and prepared by him for sale is the one which turned out to have been adulterated, it is apparent that he cannot evade the responsibility for such adulteration.

The trial court so held, and in our opinion its decision was well founded.

The appeal must be dismissed, and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.